IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD EDWARD TAYLOR, ) | |
| ) | |
| Claimant, ) | No. 13 CV 4476 |
| ) | |
| v. ) | |
| ) | Jeffrey T. Gilbert |
| CAROLYN W. COLVIN,[1] Acting ) | Magistrate Judge |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION AND ORDER

Claimant Donald Edward Taylor brings this action under 42 U.S.C. § 405(g) against Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), seeking reversal or remand of Commissioner's decision to deny Claimant's application for disability insurance benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. ECF No. 7. Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. ECF No. 11. For the reasons stated below, Claimant's motion for summary judgment is denied and the Commissioner's decision is sustained.

I. PROCEDURAL HISTORY

On October 24, 2010, Claimant filed an application for disability insurance benefits, alleging a disability onset date of November 15, 2005. R. 158-165. Claimant previously filed an application for disability insurance benefits that was denied by a different Administrative Law

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Judge on March 19, 2010. R. 18. Claimant appealed that decision to the District Court and the Commissioner's decision was affirmed on June 29, 2012, in a written opinion issued by Magistrate Judge Michael T. Mason. *Taylor v. Astrue*, 2012 WL 2525647 (N.D. Ill. June 29, 2012). Both parties agree that the relevant time period for Claimant's instant application is March 19, 2010, the date of the final denial of Claimant's first application, and December 31, 2010, Claimant's date last insured. ECF No. 12, at 1; ECF No. 19, at 2.

On March 25, 2011, the SAA initially denied the application at issue in this case. R. 94-98. Then, on June 17, 2011, the SAA denied the application on reconsideration. R. 101-103. About two months later, Claimant filed a request for an administrative hearing. R. 104-105. Administrative Law Judge Roxanne J. Kelsey ("the ALJ") held a hearing on February 24, 2012. R. 38-88. At that hearing, Claimant, who was represented by counsel, appeared and testified. R. 40. Claimant's wife, Sheila Taylor also appeared and testified. R. 40, 66. Finally, Thomas Grzesik, a vocational expert ("the VE"), appeared and testified. R. 40, 74.

Within a few weeks of the hearing, on March 12, 2012, the ALJ issued her written decision. R. 18-32. In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. R. 32. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") during the relevant period. R. 20. At step two, the ALJ found that Claimant had the severe impairments of disorder of the spine, post fusion at L4-S1, depression, and traumatic amputation of his left pinky in remote past. *Id.* At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526). R. 21.

2

At step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work. R. 23. He found that Claimant was limited to simple, unskilled work and could not have more than brief and superficial contact with supervisors, co-workers, and the general public. *Id.* The ALJ further limited Claimant's RFC because he could only: (1) balance, stoop, kneel, crouch, or crawl occasionally; (2) climb ramps or stairs occasionally; (3) never climb ladders, ropes, or scaffolds; (4) sit in one hour intervals with five minute standing breaks; (5) be exposed to hazards such as dangerous, moving machinery or unprotected heights occasionally; and (6) never have rapid ten finger manual dexterity or type quickly. *Id.*

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy which Claimant could have performed. R. 31. Specifically, the ALJ found Claimant could work as a Dining Service Worker, House Cleaner, or Industrial Cleaner. R. 31-32.

Because of these determinations, the ALJ found that Claimant was not disabled under the Social Security Act. R. 32. On May 10, 2012, Claimant sought review of the ALJ's decision. R. 13-14. On May 16, 2013, the Social Security Appeals Council denied Claimant's request. R. 1-5. Because of that denial, the ALJ's decision became the final decision of the Commissioner. R. 1. *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, a court may not "displace [an] ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court "will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if an ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While an ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). An ALJ must, at a minimum, articulate his analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

## III. ANALYSIS

Claimant raises ten arguments that, in his view, merit remand or reversal. For the reasons discussed below, none of Claimant's arguments merit reversal or remand.

4

**1. The ALJ Did Not Err by Failing to Consider Claimant's Credibility at Step Two.**

Claimant asserts that the ALJ was required by SSR 96-7p to consider Claimant's credibility at step two but that she did not do so. The case upon which Claimant relies, *Curvin v. Colvin*, 2013 WL 5349146 (E.D. Wis. Sept. 23, 2013), was reversed on appeal by the Seventh Circuit. *Curvin v. Colvin*, 778 F.3d 645 (7th Cir. 2015). In its opinion, the Seventh Circuit explained that SSR 96-7p "appears to always require a credibility determination at step 2" when it is "taken out of context." *Id.* at 648 n.3. Read correctly, the ruling only requires credibility to be considered at step two when an ALJ cannot render a decision fully favorable to a claimant at that step based solely on the objective medical evidence. *Id.* At step two, the most favorable decision an ALJ can make is that the severe impairment threshold is met. *Id.* at 649 (recognizing that a finding that a claimant "met the threshold by having a severe impairment" is "as favorable a determination as can be made at Step 2").

In this case, the ALJ found that Claimant had four severe impairments. Because she found that Claimant met the threshold, she could not have rendered a more favorable decision for Claimant at step two. Accordingly, Claimant's argument that the ALJ's decision in this respect is contrary to law lacks any merit.

It is also important to note that the ALJ fully discussed Claimant's credibility throughout her step four analysis. Her discussion at this step provided "the necessary detail to review" her step two determination "in a meaningful way." *Aguirre-Millhouse v. Colvin*, 2015 WL 3757423, at *4 (N.D. Ill. June 15, 2015). "And an ALJ's decision should not be overturned simply because the relevant analysis is set forth at a different step of the process." *Capman v. Colvin*, 617 F. App'x 575, 579-80 (7th Cir. 2015). *See also Howard v. Colvin*, 2015 WL 4394107, at *3 (N.D. Ind. July 16, 2015); *Aguirre-Millhouse*, 2015 WL 3757423, at *4.

## 2. Claimant Did Not Identify an Error in the ALJ's Questioning of the VE.

Claimant argues that the ALJ failed to direct her accommodations to the VE. However, Claimant fails to identify any accommodation that was not noted. This failure stems from the fact that the ALJ actually did question the VE consistent with her RFC. Therefore, Claimant could, and does, only argue that he cannot do each of the three jobs identified by the VE because (1) he is HIV positive, (2) he might encounter other people during the work day, (3) he needs to lean when standing, (4) he needs to use a cane, (5) he would miss too many days of work, and (6) he cannot concentrate because of pain. ECF No. 12, at 18. These are attacks on the RFC, not on the questions put to the VE.

Moreover, even with respect to these points, Claimant simply argued that he could not do the jobs identified by the VE. He did not explain why; he only asserted in a conclusory and unsupported manner that he could not do the jobs. For instance, he asserts that he "believes" he should not be around food because he is HIV positive. Likewise, he claims that he cannot do jobs when other employees are at work because that would require more than "brief and superficial contact," *id.*, even though this exact limitation was noted by the ALJ in her hypotheticals. R. 77, 79. Claimant has failed to identify any actual error with the ALJ's questioning of the VE.

## 3. Claimant Did Not Identify any Error in the ALJ's Consideration of Claimant's Pain.

Claimant asserts that the ALJ failed to properly consider his pain under SSR 96-7p. Essentially, Claimant argues that the ALJ failed to properly weigh Claimant's testimony about pain.[2] However, Claimant did not identify facts that the ALJ neglected to consider. He did not

---

[2] Claimant also argues that the ALJ "failed to consider the 7 factors in 20 C.F.R. 404.1572." ECF No. 12, at 15. This provision applies to medical opinion evidence, but Claimant did not identify what medical source's credibility was not adequately analyzed. Therefore, it is impossible to determine what argument Claimant believes this citation supports.

6

identify evidence demonstrating the ALJ's credibility finding was patently wrong. He did not explain how the ALJ's finding was not supported by substantial evidence. He did not explain how the ALJ failed to build a logical bridge with respect to her credibility analysis. All Claimant did was to note that the objective medical evidence is consistent with his claimed pain, which is exactly what the ALJ found (R. 28), and that Claimant's reports of pain and use of pain medicine show he is credible. Claimant's reports of pain and use of pain medicine were considered by the ALJ in assessing his credibility and actual pain level. Claimant has not identified a single flaw with the ALJ's consideration of these facts. It seems he just believes they should have carried more weight. That is not a proper objection to an ALJ's ruling.

**4. Claimant Did Not Identify Any Error in the ALJ's Consideration of the Early Medical Records.**

Claimant argues that the ALJ's decision to disregard Dr. Gail Gizzo's letter and accompanying treatment records was error. Specifically, Claimant argues that evidence presents foundational information for Claimant's current condition.

Claimant did not identify any specific information in these documents that the ALJ should have considered. Further, Claimant has not identified any information in the documents that is not also contained somewhere else in the vast medical record that the ALJ did consider. Claimant also has failed to explain why any of the evidence in the documents matters, beyond an undeveloped and conclusory assertion that it "set[s] the stage." ECF No. 12, at 17. Finally, even if Claimant had fleshed out this argument with the information noted above, it is not clear that would change anything. After all, Dr. Gizzo's letter was sent on September 1, 2009. R. 391. That means the letter and accompanying records all relate to Claimant's condition six months before the hearing for his last application when he was found to not be disabled. *See Taylor*, 2012 WL 2525647. That precedes the time period relevant in this case, March 19, 2010 to

7

December 31, 2010. ECF Nos. 12, at 1; 19 at 2. It is also worth noting that, in Claimant's prior case, Judge Mason found that the ALJ's decision to give Dr. Gizzo "little weight" was not an error because, among other reasons, "Dr. Gizzo's medical records . . . provide no support for her opinion that claimant cannot work." *Id.* at slip op. 22.

**5. The ALJ Did Not Err in Discounting Claimant's Credibility Due to his Daily Activities.**

Claimant argues that, for several reasons, the ALJ committed error by discounting Claimant's credibility because of the daily activities in which he engaged. Claimant asserts that the record does not reflect how often he engaged in the identified daily activities. Claimant has not identified for which activities the frequency is unknown or explained how the lack of that information is relevant. Regardless, the ALJ noted that Claimant left the house "most days," drives the children to school "daily," prepares easy meals, washes dishes, folds clothes, vacuums "weekly," and "plays limited catch and basketball with his son." R. 21, 23. These findings were born out by the record. *See, e.g.,* R. 44 (takes the kids to school daily), 49 (tries to read while laying down "most of the time"), 50 (goes to church most Sundays), 52 (goes to the grocery store a "few times a week"), 54 (goes to seventy-five to eighty percent of his son's games), 208 (vacuums, does laundry, and grocery shops "2/3 times /wk;" make meals for himself "daily;" and makes family dinner "2-4 times /wk" unless they eat out); R. 231 ('very limited catch with my son, he chases the ball when I miss it. [S]ame shooting hoops while standing still.").

Claimant also claims that the daily activities cannot carry much weight because he uses a wheel chair when he goes out. In support, Claimant cites a portion of the record in which his wife, in 2010, said that he "always uses a wheelchair if we go anywhere that requires walking." R. 212. Claimant clarified in a separate document from the same year that he only used the

8

wheelchair for long outings. R. 500. This is consistent with the daily activities describe above and, therefore, with the ALJ's credibility findings.

Finally, Claimant asserts that daily activities are not the same as working and, thus, do not undercut his credibility. Claimant is right on the first point. But the ALJ did not equate the two; she built a detailed logical bridge from his daily activities to his credibility. She explained how his shopping, attending family activities, and driving kids disprove his claim of significant restrictions in daily living. R. 21. She noted how his leaving the house most days, remaining active with his children, and working with his family, friends, and pastor undercuts his claim of significant social functioning restrictions. R 21-22. She described how his reading, watching TV, banking online, paying bills, using a check book, and counting change undercut his claim of significant concentration restrictions. R. 22. And she thoroughly detailed how his daily activities, such as the ones discussed in the preceding paragraph, discredit his claim of needing to lie down throughout the day, being in constant severe pain, and being unable to walk or stand. R. 23-24. Indeed, in many respects this was a model example of how closely and thoroughly daily activities should be examined in the course of evaluating a claimant's credibility.

**6. The ALJ Did Not Err by Failing to Use the Term "Failed Back Surgery Syndrome."**

Claimant argues that the ALJ erred by failing to discuss Claimant's Failed Back Surgery Syndrome. "Failed back surgery syndrome (also called FBSS, or failed back syndrome) is a misnomer since it is not actually a syndrome but rather a very generalized term often used to describe the condition of patients who have not had a successful result with spine surgery. There is no equivalent term for this in any other type of surgery." *Lucio v. Barnhart*, 2004 WL 1433637, at *7 n.14 (N.D. Ill. June 22, 2004) *report and recommendation adopted*, 2004 WL 1664005 (N.D. Ill. July 21, 2004). It refers "to chronic back and/or leg pain that occurs after

9

back (spinal) surgery, usually after laminectomy." *Schilling v. Epic Life Ins. Co.*, 2015 WL 856575, at *2 n.6 (W.D. Wis. Feb. 27, 2015). Where an ALJ addresses all of a claimant's alleged back and leg problems which "are nearly identical to those associated with FBSS" then failing to use the label FBSS is not an error meriting remand or reversal because "adding the label [FBSS] would add nothing." *Fratantion v. Colvin*, 2014 WL 3865249, at *14 (N.D. Ill. Aug. 5, 2014).

Here, the ALJ cited and discussed in detail the medical information from Dr. Eugene Lipov's report diagnosing Claimant with FBSS. R. 26 (the ALJ's discussion), 689 (the report). That is the very report Claimant cites in his argument on this matter. ECF No. 20, at 2. Further, the ALJ also cited and discussed a subsequent report from Dr. Lipov that also referenced Claimant's FBSS. R. 26 (the ALJ's discussion), 691-693 (the report). Beyond simply Dr. Lipov's reports, the ALJ also engaged in an extensive discussion of other medical evidence about Claimant's back condition and leg pain. R. 25-26. Therefore, it is clear that the ALJ considered in detail all the medical evidence relevant to Claimant's FBSS diagnosis. Claimant has failed to explain why her failure to use one medical term is an error that affects the ALJ's analysis in any way. The ALJ did not commit error in this respect because adding the label would have added nothing more of substance. *See Frantantion*, 2014 WL 3865249, at *14.

**7. The ALJ Did Not Err in Finding Claimant Can Do Light Work.**

Claimant argues that the ALJ erred by finding Claimant capable of light work.[3]

First, Claimant argues that the ALJ misconstrued a letter from Shirley Gehrke, a Professor at Joliet Junior College. R. 276. In the letter, the Professor explained that she taught

---

[3] Claimant also contends that the ALJ was wrong to include in her RFC simple, unskilled work because he has severe depression. ECF No. 12, at 16. This condition and its effects were considered by the ALJ. R. 22, 27-28. Claimant provides no support for his contention that severe depression is inconsistent with this RFC limitation. Therefore, the argument need not be addressed.

10

Claimant in a course offered by the college and that Claimant was "a very hardworking and conscientious student and was always concerned about his homework." *Id.* She also noted that it was "difficult" for Claimant to sit for long periods and that he "had to stand many times" or "sometimes kneel[]" during the seventy-five minute class. In characterizing this letter, the ALJ described how it showed that Claimant "had adequate concentration to go to school and do college-level work." R. 25.

Claimant contends that the ALJ was wrong to emphasize college-level work because this was an entry-level Microsoft Word course. Claimant makes too much of this; the ALJ's use of the term "college-level" did not seem to be anything more than descriptive. Moreover, it is technically correct since the course was being offered by a college. Claimant also contends that the ALJ misconstrued the portion of the letter related to his ability to sit. But the ALJ described how Professor Gehrke "noted that it was difficult for claimant to sit for extended periods." R. 25. The ALJ's more significant finding was that Professor Gehrke did not provide a more detailed description that would have been more useful in crafting an RFC. *Id.* That is true. Therefore, the ALJ's description and treatment of Gehrke's letter was entirely proper.

Second, Claimant contends that that the ALJ cherry-picked statements from Ed Wilkins, Claimant's son's baseball coach. Wilkins' noted in his letter that Claimant regularly attended games and, when there, walked around every ten to fifteen minutes and kept getting up and down. R. 278. In discussing this statement, the ALJ said, "I accounted for his observations by allowing for a change of positions within the residual functional capacity." R. 25. This language makes indisputably clear that, although she did not quote the language from Wilkins' letter, she read and considered the portion regarding Claimant's need to move about. Indeed, there is no

11

other portion of the letter to which the ALJ's statement logically could refer. Again, the ALJ did not misconstrue the evidence.

Third, Claimant argues that the RFC does not take into consideration Claimant's difficulties with standing and inability to sit for an hour before getting a five minute break. But the ALJ dealt extensively with the evidence regarding Claimant's ability to stand and sit. R. 21-24. And, in so doing, she identified substantial evidence to support her decision. She discussed at length the daily activities referred to above in this opinion. Many of them require long periods of sitting or standing, including, for example, cooking, vacuuming, driving, and shopping. According to Claimant's wife, Claimant will spend ten minutes vacuuming, twenty minutes shopping for groceries, and ten to fifteen minutes on laundry. R. 208. She also stated that he can walk fifteen to twenty minutes, although he is in pain. R. 211. These are similar to the time frames that Claimant indicated. R. 229.

Further, the ALJ discussed at length the objective medical evidence. For instance, she noted that a 2010 physical examination "showed motor power of 5/5 without any focal weakness" and a negative straight leg raising. R. 26. She discussed additional physical tests from January 21, 2011, that indicated reduced ranges of motion but with a negative straight leg rising bilaterally and lower extremity strength of 5/5. *Id.* She summarized another physical exam from March 5, 2011, which was again consistent with her RFC. R. 26-27. She also considered the findings of Dr. David Bitzer, a state agency medical consultant. R. 29. Dr. Bitzer specifically found that Claimant could "sit for 1 hr and stand for 5 min breaks to alleviate pain." R. 724. He determined that, with normal breaks, Claimant could both sit and stand for six hours in an eight-hour workday. *Id.* Dr. Bitzer's determination was affirmed by Dr. Francis Vincent

12

on reconsideration. R 30, 730-732. Based on this wide base of evidence, the ALJ found that Claimant could sit for one hour with five minute breaks.

Claimant disagrees with this determination, of course, and correctly notes that there is some contrary evidence in the record. But the standard of substantial evidence only requires "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), as amended (Dec. 13, 2000). This standard does not allow the court to "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Id.* The ALJ's determination was supported by extensive medical evidence and evidence of Claimant's daily activities. She conducted a thorough analysis of the record, discussing the contrary evidence that Claimant has noted. She weighed this evidence, resolved these conflicts, and made proper credibility findings. That is enough to satisfy the substantial evidence standard.

## 8. The ALJ Did Not Err by Finding Claimant's Condition Did Not Fall Within Listing 1.04(c).

Claimant argues that the ALJ erred by finding Claimant did not fall within listing 1.04(c). "Listing 1.04 covers disorders of the spine, including degenerative disc disease." *Hilliard-Edwards v. Astrue*, 2008 WL 5070485, at *6 (S.D. Ind. Dec. 1, 2008). "To meet Listing 1.04(C), a claimant must present evidence of lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.002(B)(2)(b)." *Lange v. Astrue*, 2012 WL 5818258, at *13 (N.D. Ill. Nov. 14, 2012) (internal quotation marks omitted). "Under § 1.00(B)(2)(b)(2) of Appendix 1, 'inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or

13

complete activities.' This level of impairment 'is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities' such as a walker, two crutches, or two canes." *Kastner v. Astrue*, 697 F.3d 642, 650 (7th Cir. 2012).

Claimant devotes many words in his brief talking about degenerative disk disease, neuropathy, limited range of motion tests, and so on. ECF No. 12, at 10. At no point, though, does Claimant discuss evidence indicating that he had such an extreme limitation of his ability to walk that it very seriously interfered with his ability to independently initiate, sustain, or complete activities. Claimant also fails to identify any evidence that he ever used a hand-held assistive device that limited the functioning of both upper extremities.

Indeed, as thoroughly discussed above, Claimant, without assistance from others, initiated, sustained, and completed many daily activities that required walking. There is no evidence that he uses a wheelchair when engaging in most of these activities, such as shopping for groceries, cooking dinner, attending sporting events, playing catch with his son or shooting baskets. He only uses the wheelchair for certain, particularly long outings. And Claimant uses only one cane on those occasions. R. 808. There is no other ambulatory device that Claimant uses, much less one that limits the functioning of both upper extremities. Moreover, Claimant's ability to ambulate was confirmed by a range of medical testing. For example, Dr. Stanley Simon's physical examination found that Claimant could "walk greater than 50 feet without support" and that his "gait was non-antalgic without the use of assistive devices." R. 26, 704. Further, the medical evidence discussed above with respect to Claimant's RFC analysis also supports the ALJ's conclusion on this point. This wealth of evidence satisfies the substantial

14

evidence standard for the ALJ's finding that Claimant did not have an inability to ambulate effectively.

Because the ALJ's finding was proper on this point, it is irrelevant whether she mentioned Claimant's degenerative disk disease or neuropathy. Because Claimant can ambulate effectively, he cannot satisfy Listing 1.04(c).

## 9. The ALJ Did Not Err by Finding Claimant's Condition Did Not Fall Within Listing 12.04B.

Claimant argues that the ALJ erred by not finding that Claimant's mental impairment medically equals the criteria of Listing 12.04B. Specifically, Claimant asserts that the ALJ erred by misconstruing evidence and that the ALJ's decision was not supported by substantial evidence.

"Under listing[] . . . 12.04, a claimant is disabled if she exhibits two of the following impairments: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." *Smith v. Barnhart*, 59 F. App'x 901, 906 (7th Cir. 2003). "A 'marked' limitation 'means a limitation that is 'more than moderate' but 'less than extreme.'" *Macklin v. Colvin*, 2013 WL 5701048, at *5 (S.D. Ind. Oct. 18, 2013).

Claimant argues that the ALJ erred by misstating the reports of Connie Vaisvilas-Taylor Associates ("CVTA") and Psychologist Michael E. Stone. Claimant is wrong. Claimant tries to establish the first error by quoting the ALJ's summary of the CVTA report and a long description in the report of what Claimant told CVTA personnel. ECF No 12, at 15. However, the two are not inconsistent. R. 22, 673. The ALJ simply recounted the portion of the report linked to memory and judgment while Claimant cited another portion of the report that dealt with separate

15

issues – sleep, appetite, concertation, energy, suicidal thoughts, and so on. Moreover, the ALJ clearly considered the portion of the report cited by Claimant because she discussed it later in her ruling. R. 27. Therefore, the CVTA report was not misconstrued.

Claimant also is wrong in contending that the ALJ misconstrued Dr. Stone's report. Claimant tries to claim that the ALJ "omitted" information from her discussion, namely Claimant's reports of pain and depression, his belief that he will have trouble finding employment, his below average intelligence, his guarded prognosis, and his inability to manage benefits. ECF No. 12, at 16. Again, the ALJ dealt with all of these matters. R. 27-28. She referenced Claimant's intelligence level, guarded prognosis, and depressive mood and thought content. R. 28. There is no indication that the ALJ did not consider Claimant's belief about his ability to work. Regardless, this statement is not inconsistent with all the other evidence in the report discussed by the ALJ. And an ALJ "need not discuss every piece of evidence in the record. . . ." *McDonald v. Astrue*, 858 F. Supp. 2d 927, 935 (N.D. Ill. 2012).

Finally, Claimant argues that substantial evidence does not support the ALJ's determination that he does not have marked difficulties in social functioning, daily activities, and concentration. In making this argument, Claimant cites one or two pieces of evidence indicating he has some difficulties in each area. He fails to point to any evidence not considered by the ALJ. Further, the ALJ engaged in a detailed, thorough discussion of Claimant's daily activities, R. 21, social functioning, R. 21-22, and concentration, R. 22. She discussed substantial evidence upon which she relied in finding that Claimant did not have marked restrictions in these areas. She explained how Claimant engaged in a wide range of daily activities, which were discussed previously in this opinion, that were not consistent with marked restrictions. R. 22. She noted how his claims of poor social functioning were inconsistent with his family activities,

16

cooperativeness throughout physical treatment, and relationships with family, friends, and his pastor. *Id.* And she discussed how his claims of concentration difficulties were undercut by his daily activities, behavior during medical treatment, and mental health exams. *Id.* This evidence was substantial enough to support the ALJ's conclusion that Claimant did not have marked difficulties.

**10. The ALJ Did Not Err in Weighing the Medical Opinions of Claimant's Treating Physicians.**

Claimant argues that the ALJ erred in weighing the testimony of his two treating physicians, Dr. Lorenz and Dr. Lipov. "[A] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder*, 529 F.3d at 415. If well-supported contradictory evidence is introduced, however, the treating physician's opinion is no longer entitled to controlling weight; it becomes another piece of evidence for the ALJ to weigh. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Then, an ALJ need only weigh the factors provided in 20 C.F.R. § 404.1527 and make a weight determination. *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015). In so doing, an ALJ only is required to "minimally articulate" her reasons for discounting a physician's opinion—a standard deemed "lax" by the Seventh Circuit. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

As an initial matter, the Court notes that the weight given to Dr. Lorenz's opinion was an issue on the appeal of Claimant's previously denied application. *Taylor*, 2012 WL 2525647, at *10-12. That case is not the same as this. It is instructive to note, however, that Judge Mason determined that "the ALJ was correct to discount Dr. Lorenz's opinion," *id.* 21, by giving it "little weight," *id.* 18, "because it was not supported by objective medical evidence and it

17

appears to be based solely on Taylor's subjective complaints of pain," *id.* at 21. Judge Mason's opinion thoroughly examined many of the medical records before this Court in making his determinations. His conclusions are well-reasoned and well-supported.

In this case, the ALJ similarly gave Dr. Lorenz's opinion rendered in 2012 "very little weight." R. 29. She explained that some of Dr. Lorenz's report was made after the date Claimant was insured and, thus, discussed Claimant's condition at that time. *Id.* The ALJ also concluded, like Judge Mason, that Dr. Lorenz failed to support his opinions with any clinical findings. *Id.*

Claimant faults this analysis because the ALJ failed to discuss the enumerated factors in § 404.1527. The Seventh Circuit has explained, however, that it "is enough" for an ALJ to "note the lack of medical evidence supporting [an] opinion and its inconsistency with the rest of the record." *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (internal citation omitted). An ALJ need not "explicitly weigh every factor . . . ." *Id.* Here, the ALJ did exactly what the Seventh Circuit found was enough in *Henke*. She, consistent with Judge Mason's finding, determined that the medical evidence did not support Dr. Lorenz's conclusion that Claimant was unable to work. R. 29. And she determined that the findings of Dr. Lorenz's physician assistant, which were consistent with Dr. Lorenz's findings, were "inconsistent" with Claimant's daily activities and "the clinical examination findings throughout the record." *Id.*

The ALJ is correct. Dr. Lorenz found that Claimant "can only walk about 100 feet where he needs to stop." R. 808. But this is inconsistent with his daily activities and physical examination results discussed previously in this opinion. Dr. Lorenz also reported that Claimant "states" he can only sit fifteen minutes and stand fifteen minutes and that he "has difficulty going even from his car into a store." *Id.* This is simply a recitation of Claimant's statements, not

objective clinical findings. Moreover, Dr. Larenz's statements are clearly contradicted by the substantial evidence discussed previously. Dr. Lorenz appears to try to indicate that there is a medical basis for these facts by saying they are consistent with Claimant's behavior in the medical office and "history." *Id.* But Dr. Lorenz does not identify actual clinical findings either in the medical office or from Claimant's history. Therefore, the ALJ had good reasons for discounting Dr. Lorenz's opinion and adequately explained them under § 404.1527.

The only other medical opinions[4] that Claimant contends the ALJ should have credited are (1) both doctors' FBSS diagnoses and (2) the constant "report[s]" of "back problems." ECF No. 12, at 12. As explained previously in this opinion, the ALJ did not discount the medical findings behind the FBSS diagnosis; she merely did not use the proper name. Thus, she did not fail to give the diagnosis controlling weight. As to the second set of opinions, Claimant fails to identify what specific opinions about back problems, other than those discussed above, were not credited. Therefore, the ALJ did not err in her treatment of Dr. Lorenz's or Dr. Lipov's opinions.

## 11. The ALJ Did Not Err in Weighing the Medical Evidence.

Lastly, Claimant contends that the ALJ erred in weighing the medical evidence because she selectively used the record. ECF No. 12, at 14. The only selective use that Claimant identifies is the ALJ's failure to mention the FBSS assessment. Again, for the reasons discussed above, this was not a material omission. By fully discussing the medical facts underlying Claimant's diagnosis, the ALJ provided a meaningful explanation of the relevance of this condition.

---

[4] Claimant lists many of the tests performed by his doctors and their diagnoses. ECF No. 12, at 12. For example, he specifies how tests showed diffuse degeneration of his back and he had a lumbar discography in 2005. The ALJ did not fail to credit these facts, that is that the procedures happened or that they yielded these test results. She only discounted Dr. Lorenz's opinions about the effect of these medical conditions on Claimant, as discussed above.

## IV. CONCLUSION

For the above reasons, Claimant's motion for summary judgment [ECF No. 11] is denied and the Commissioner's decision is sustained. This is a final judgment.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 3, 2015